## FAULKNER v. JORDAN.

### No. 4739.

Court of Appeal of Louisiana. Second Circuit.

March 2, 1934.

C. B. Prothro, of Shreveport, for appellant.

Mabry & Carstarphen, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff sues for wages due him for services rendered as clerk in defendant's retail stores in the city of Shreveport, La., as follows:

| | |
|---|---|
| 60 days—from 6/6/32 to 8/14/32 at $1.00 per day.................... | $ 60.00 |
| 218 days—from 8/15/32 to 3/20/33 at 75¢ per day.................. | 163.50 |
| | $223.50 |
| Less credit in cash for goods, etc. ...................... | 39.14 |
| | $184.36 |

He alleges that he was employed by defendant to render said services at the daily wages above mentioned.

Defendant admits that he employed plaintiff as clerk in his store at 2431 Fetzer avenue, at the daily wage of $1, and that he worked there for sixty days, but, finding that he did not need him longer, on August 14, 1932, dispensed with his services. He also admits that he employed plaintiff as a clerk in his store at East College and Cornwell streets, but denies that he agreed to pay him any salary or wages for his services there, and denies that he is due plaintiff any amount on that or any account.

Defendant alleges that plaintiff importuned him to open up the mercantile business on East College street and to place him in charge thereof, voluntarily agreeing that he would operate the store and do all the services needful to carry it on if defendant would provide him with meals and sleeping quarters, and that no additional compensation would be required or demanded for the services; that plaintiff was put in charge of said store on the terms and conditions submitted by himself. Defendant further alleges that he specifically instructed plaintiff not to sell goods to any one on credit, but that he, in violation of these instructions, sold to negro customers indiscriminately on credit in an amount in excess of $100, of which amount he had been able to collect only $20. He reconvenes and sues plaintiff for the balance of $80 due on these credit accounts.

There was judgment for plaintiff for $144.-29, with 5 per cent. per annum interest from April 24, 1933, until paid. Plaintiff was charged by the lower court with $40.07, being the total of the balance due the East College street store by customers to whom goods were sold on credit by him. This appeal is prosecuted by defendant. Plaintiff has answered the appeal, praying that the judgment be increased to the full amount sued for.

In the latter part of the month of December, 1931, plaintiff, being without employment, advertised in a local paper for a position as clerk in a mercantile business wherein, inter alia, he stated: "Salary no object. * * * Try me out and then pay me only what I am worth." At that time defendant was operating a small retail business in Bossier City. He read this advertisement and promptly got in touch with plaintiff. Several conferences were had between them at defendant's place of business in Bossier City, but at that time plaintiff's services could not be availed of. At this time defendant was negotiating for the purchase of the stock of goods of one Rossetti, at East College and Cornwell streets, but the trade did not materialize. Had the purchase been made, plaintiff would have been placed in charge of the business.

About March 15th, defendant bought a small stock of merchandise on Fetzer avenue, and there gave plaintiff work. Presumably, in keeping with the conditions of plaintiff's advertisement for a position, there was no agreement made as to compensation for his services in this position. Evidently, he was to be tried out first. He worked under this employment for 33 days, for which he was paid, according to his evidence, $1.25 per day, but, according to defendant, $1 per day. His services were dispensed with because defendant desired to have a clerk who could cut meats. However, plaintiff was reemployed on June 6, 1932, and continued to clerk for defendant in the Fetzer avenue store until August 14th following. In the meantime, Rossetti vacated the store building on East College street and defendant rented it, and on March 15th moved his stock of goods from Bossier City to the new location. Plaintiff was transferred by defendant to the new store and placed in charge thereof as clerk and manager. He was provided with board and lodging by defendant, but no amount in cash was paid him or demanded by him until the early part of January, 1933. According to his testimony, plaintiff then stated to defendant that they should have a settlement, adding, "We might forget what we are doing, and then see

whether he was going to keep me." Defendant then made a calculation on the reverse side of a blank check to this effect: He allowed plaintiff $1 per day for the sixty days he had worked under second employment in the Fetzer avenue store and 75 cents per day for 139 days (from August 15th to date the calculation was made), for services while running the East College street store—a total of $164.25 due plaintiff. This paper, with defendant's figures and calculations thereon, was given to plaintiff, and is part of the evidence in the case. Plaintiff continued to render services in the store until March 20, 1933, at which time he was discharged. Defendant then paid him $20 in cash, and subsequently made payments of $7 and $8 to him. Plaintiff accepted defendant's own figures and calculations on this paper as a settlement between them, or rather a commitment by defendant as to the measure of his liability to plaintiff at that time.

Plaintiff states that, when he and defendant learned that the Rossetti building was vacant, they discussed the chances of making money there from a retail business, and figured up the cost of operating such a store, and, being favorably disposed to the undertaking, defendant immediately called the owner of the building and rented it. He stated that he was promised no salary by defendant; that his compensation was to remain in abeyance "until we figured up the profit shown by the business."

Defendant insists that plaintiff agreed to run the East College street business for his board only, and in this respect he is corroborated by the testimony of Mrs. Jordan and another witness. However, running through all this testimony, there is the outstanding fact that no promise was made to pay plaintiff a salary. He does not contend that this was done, but does contend that the terms of his advertisement for work were accepted by defendant, and in this he is amply supported by defendant's own action, so far as concerns the services rendered at the Fetzer avenue store. Defendant received the benefits of his service and fixed the compensation therefor, which was accepted by plaintiff.

■ However, regardless of any misunderstanding that may have originally existed about the contingent compensation for plaintiff's services at the East College street store, that question was settled when it was shown that the business under plaintiff's management was successful, and defendant, with full knowledge of the facts, as he had previously done, appraised the value of the services rendered and fixed same at 75 cents per day. Defendant made an abortive effort to explain why he made the calculation on the blank check when plaintiff asked for a settlement. Among other things, he says: "* * * Then the question arose, I said I couldn't keep you and pay you a salary, and if I can't find something for you to do that I can make more money out of; casually I took the number of days that I had down there in order that I might have something to do and I might give him more than room and board."

And further, when asked if what he had written on the back of the check was an agreement between him and plaintiff, replied: "That is more of a figure to see what I might get on the outside and retain him in the store; it was thoroughly understood with my wife and myself that room and board would be all he would consider."

After this was done, he continued to avail himself of plaintiff's services for nearly three months. These explanations are ambiguous. They do not serve the purpose intended.

The record discloses that the gross sales of the Fetzer store under plaintiff's management, a period of seven months, amounted to $3,278.27, and defendant admits the gross profit thereon would run from 20 per cent. to 25 per cent., and the net profit about seventeen per cent. on the volume of business. The business did not represent a large investment. Dividends thereon, based upon the high percentage of profit, reflect good management on the part of plaintiff; and, as further proof of such management, the small amount of outstanding accounts due the business, only $40.07, may be pointed to.

■ Defendant, while inveighing against plaintiff for extending small lines of credit to some customers, after taking over the management of the business on March 20th, also extended credit to many of these same customers. He explains that he did this because he thought by doing so the old accounts could be collected. If these customers were not considered good pay by him, it is not likely he would have risked an increase in the amount of their accounts. It is shown that substantial amounts of the accounts were collected after plaintiff retired from the business. It is not alleged or proved that the balance due thereon cannot be collected, nor that those who owe the accounts cannot be forced to pay through court

action, if such becomes necessary. This being true, defendant has not established that he has suffered loss as a result of plaintiff's action in selling his goods on credit.

For the reasons herein assigned, the judgment appealed from is amended by increasing the amount thereof to $184.36, and, as amended, said judgment is affirmed, with costs.